IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JUBILEE HOUSE COMMUNITY, INC.,        )
                                      )
                Plaintiff,            )
                                      )
        v.                            )            1:11CV45
                                      )
COKER INTERNATIONAL, INC.,            )
and JACKSON COKER, SR.,               )
                                      )
                Defendants.           )

MEMORANDUM OPINION, RECOMMENDATION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE

        This matter comes before the Court on Defendants' Motion to Dismiss or to Transfer

[Doc. #12] pursuant to Federal Rule of Civil Procedure 12(b)(2), (b)(3), and (b)(6).  The Court

held a hearing on the Motion on March 21, 2013.  For the reasons that follow, the Court

recommends that this action be transferred to the United States District Court for the District

of South Carolina.

I.      FACTS, CLAIMS, AND PROCEDURAL HISTORY

        This is a civil RICO[1] action in which Plaintiff Jubilee House Community, Inc. ("Jubilee"

or "Plaintiff"), claims that Defendants Coker International, Inc. ("CI") and its President, Jackson

Coker, Sr. ("Mr. Coker" or "Defendant Coker"), engaged in mail and wire fraud in connection

with a contract in which CI agreed to sell yarn-spinning equipment to Jubilee for $230,000.00,

to be used in Jubilee's operations in Nicaragua.  (Pl.'s Compl. [Doc. #1].)  Plaintiff Jubilee alleges

_____

        [1] The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.A. §§ 1961-68 (West 2000 & Supp.
2012).

that it has paid $150,000 to CI, but that CI has failed to provide the proper equipment or a refund of that money. In addition to the RICO claims, Plaintiff also raises state law causes of action for fraudulent misrepresentation, violations of the North Carolina Deceptive Practices Act, breach of contract, and unjust enrichment. Defendants have responded with the present Motion to Dismiss, contending that this Court lacks personal jurisdiction over CI and Mr. Coker, that venue in this district is improper, that venue should be transferred based on a balancing of the conveniences under 28 U.S.C. § 1404(a), and that Plaintiff has failed to state a valid claim under RICO.

Plaintiff Jubilee is a non-profit corporation, incorporated in North Carolina, with its principal office in Lewisville, North Carolina, and with operations in Ciudad Sandino, Nicaragua. Defendant CI is a seller of textile machinery organized under the laws of South Carolina with business operations in South Carolina. Defendant Coker is the president of CI and is a citizen and resident of South Carolina.

The following facts are taken from Plaintiff's Complaint. In the Summer of 2007, Jubilee obtained financing to purchase equipment to produce and market cotton fabrics and clothes in Nicaragua. (Pl.'s Compl. at 3.) This project was part of Jubilee's anti-poverty program in Nicaragua, in which Jubilee sought to create a "vertically integrated organic cotton supply chain, linking farming, ginning, spinning, knitting and fabrication to produce and market cotton fabrics and clothes." (Id.) As part of this project, Jubilee began the process of identifying appropriate equipment to open its plant in Nicaragua. On October 31, 2007, Jubilee received an email from Christian Hancock, whom Plaintiff alleges was "working on behalf of Defendants," offering to

sell a cotton baler to Jubilee.  Plaintiff further alleges that soon after this email, Defendant Coker communicated by email with Mike Woodard, Jubilee's manager of operations, concerning the baler sale.  (Id. at 4.)  Mr. Woodard resides in Nicaragua.  (Woodard Aff. at 1.)  In the email to Mr. Woodard, Defendant Coker offered to sell to Jubilee a working baler for $8,300.00, delivered to Managua, Nicaragua.  By email dated December 3, 2007, Jubilee sent a purchase order for the baler to CI in care of Christian Hancock, and paid $8,300 to CI for the equipment. (Pl.'s Compl. at 4.)  CI delivered a baler to Jubilee in Nicaragua in February 2008, but according to Plaintiff, the baler did not work and was stripped of several key components.  (Id.)  Jubilee demanded a refund of the purchase price from CI.

On May 20, 2008, CI promised to deliver a functional replacement baler.  (Id.)  Prior to shipping the replacement baler, Defendant Coker offered to sell Jubilee additional spinning equipment for $125,000.  (Id. at 5.)  Negotiations concerning the damaged baler and additional equipment continued during the Summer of 2008 and well into 2009.  During this time, equipment was identified in Venezuela that was appropriate for Jubliee's needs.  (Id.)  As a result, "[t]hrough a series of emails between Jackson Coker, Sr. and Mike Woodard, an agreement was reached" for CI to provide a complete spinning plant to Jubilee in Nicaragua. (Id.)  In addition, Defendants agreed to deliver additional equipment from CI's South Carolina warehouses to Jubilee in Nicaragua.   This agreement was reflected in a commercial invoice dated October 14, 2009. (Id. at 6.)  The agreement called for Jbuilee to pay CI a total of $230,000 for the equipment, including a $115,000 down payment.

Plaintiff alleges that on or about October 13, 2009, Defendant Coker advised Mike Woodard via telephone that instead of the $115,000 down payment, Defendants could "get it done" with a payment of only $90,000 to $100,000. (Id.) Plaintiff further alleges that on October 16, 2009, Defendant Coker promised Jubilee that Defendants would begin shipping the equipment within three weeks of receiving payment from Jubilee. Plaintiff contends that in reliance on this representation, Jubilee wired a $50,000 payment to Defendants on October 16, 2009, and an $18,357.50 payment on October 22, 2009. In addition, another entity, Clean Clothes, Inc., made a $31,642.50 wire transfer to Defendants on behalf of Jubilee on October 26, 2009. (Id. at 7.) Jubilee had not received any shipments when, on December 11, 2009, Defendant Coker sent an email to Plaintiff demanding an additional $50,000 payment. On this same day, Jubilee wired an additional $50,000 to Defendants. Jubilee also began making modifications to its building in Ciudad Sandino, Nicaragua, to house the machinery identified in the agreement.

According to Plaintiff, Defendant Coker, or others working on his behalf, sent several emails to Jubilee dating from January 2010 through June 2010, falsely representing that the equipment would be shipped at certain times. (Id. at 8-10.) On June 8, 2010, Defendant Coker emailed Jubilee and requested that Jubilee pay another $55,000, and on June 21, 2010, Defendant Coker telephoned Mike Woodard with the same request. On July 29, 2010, four containers containing spinning equipment were shipped from Venezuela. (Id. at 10.) However, they were shipped to Costa Rica rather than Nicaragua. Jubilee then arranged to have the containers delivered to Nicaragua. The four containers arrived in Nicaragua on November 11, 2010.

4

Plaintiff alleges that it had to pay for all of the costs of transporting the equipment from Costa Rica to Nicaragua.  Plaintiff further alleges that the equipment in these containers was not the equipment it had contracted to purchase from Defendants and was in non-working condition. (Id. at 11.)  Therefore, Plaintiff contends that even though it has paid Defendants $150,000, it has received nothing of value in exchange.  (Id. at 12.)

Defendants have filed the present Motion to Dismiss, seeking to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(2) and (b)(3) for lack of personal jurisdiction or improper venue, or in the alternative to transfer the action to South Carolina pursuant to 28 U.S.C. § 1406(a) or § 1404(a).  Defendants also contend that Plaintiff's RICO cause of action fails to state a claim upon which relief may be granted and should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  With respect to the issues of personal jurisdiction and venue, Defendant Coker has submitted an affidavit in support of Defendants' Motion.  Plaintiff has responded and has submitted an affidavit of Mike Woodard.

In support of their Motion, Defendants note that CI is a South Carolina company, with its only office and place of business in South Carolina, and Mr. Coker is a citizen and resident of South Carolina with no connections to North Carolina.  Defendants further note that CI has never qualified or sought to do business in North Carolina, never had any place of business or officer or employee in North Carolina, and does not direct solicitations of business to North Carolina.  With respect to the transaction with Jubilee, Defendants note that in 2008, Mr. Coker received telephone calls or emails from Chris Hancock, a yarn salesman in New Jersey, regarding a charitable organization in Nicaragua that wanted to buy a spinning mill.  CI provided a quote

5

to Hancock, and Mr. Coker later received a phone call from Mike Woodard, who said that he

was calling from Nicaragua on behalf of Jubilee House, a non-profit organization working on

anti-poverty programs in Nicaragua.  Mr. Coker discussed the project with Mr. Woodard, and

later communicated with Mr. Woodard in Nicaragua regarding the terms of the sale.  The

agreement is reflected on a Commercial Invoice, dated October 14, 2009, showing a sale from

Coker International in Greenville, South Carolina, billed to "M/S Mike Woodard;

CDCA/Jubilee House; Managua, Nicaragua."  The invoice reflects a sale of certain listed

equipment for $230,000.00 total, with $115,000.00 due immediately, and with wiring instructions

for payments to the Regions Bank in Birmingham, Alabama.  (Coker Aff. Ex. 1 [Doc. #15 at

6].)  The invoice reflects that all machines were to be delivered to the Nicaragua port.  In his

affidavit, Mr. Coker contends that his only contact with Jubilee was by telephone or email

between CI's office in South Carolina and Mike Woodard in Nicaragua, with no part of the

agreement made or performed in North Carolina.

In response, Plaintiff has submitted an affidavit from Mike Woodard, who identifies

himself as the Executive Director of Jubilee.  Mr. Woodard notes that he is a North Carolina

citizen currently residing in Ciudad Sandino, Nicaragua.  Mr. Woodard further notes that he had

multiple telephone conversations with Mr. Coker and other representatives of CI between 2008

and 2010 regarding the purchase of machinery by Jubilee. Mr. Woodard contends that during

this time period, Mr. Coker contacted him by telephone by "calling Jubilee House Community's

North Carolina telephone number" which is registered to a physical address in Asheville, North

Carolina, and which "connects callers via a Voice over Internet Protocol to Jubilee House

6

Community office in Nicaragua." Mr. Woodard contends that Mr. Coker contacted him via this phone system "at least 20 times" during the 2008-2010 time period. In addition, Mr. Woodard notes that he travels to North Carolina to conduct business on behalf of Jubilee, and that he also "received several telephone calls from Jack Coker regarding the transaction on a cell phone while I was physically present in North Carolina" and likewise Mr. Woodard "phoned Jack Coker and Coker International from my cell phone while I was present in North Carolina." Finally, Mr. Woodard notes that Mr. Coker gave him instructions for making wire transfers to CI in October and December 2009, which involved wiring funds from North Carolina, Nicaragua, and Michigan. Mr. Woodard states that as part of the October 2009 wire transfer, a Jubilee employee called an employee of CI to discuss the wire transfer, and CI employee Paula Yarborough provided instructions for wiring the funds from Jubilee's account in North Carolina to CI's account in Alabama. With respect to the December 2009 wire transfer, Mr. Woodard contends that he was in North Carolina at the time of that transfer, and that while he was in North Carolina, he discussed with Mr. Coker the details of the transfer from Jubilee's North Carolina bank. Based on these contacts, Plaintiff contends that this Court has personal jurisdiction over CI and Mr. Coker, and that venue is proper in this District.

II.    DISCUSSION

Defendant first seeks dismissal of this suit for lack of personal jurisdiction over CI or Mr. Coker. In a RICO action, personal jurisdiction may be based on the "nationwide service of process" provisions of 18 U.S.C. § 1965, or on state long-arm provisions or other provisions as provided in Federal Rule of Civil Procedure 4. See Combs v. Bakker, 886 F.2d 673 (4th Cir.

1989).    In the present case, Plaintiff contends that jurisdiction is proper under the North

Carolina long-arm statute[2] and pursuant to the nationwide service of process provision in RICO.

With respect to the RICO provision, in ESAB Group, Inc. v. Centricut, Inc., the Court of

Appeals for the Fourth Circuit held that RICO "authorizes service of process 'in any judicial

district in which such person resides, is found, has an agent, or transacts his affairs,' 18 U.S.C.

§ 1965(d), evidencing Congress' desire that '[p]rovision [be] made for nationwide venue and

service of process.' H. Rep. No. 91-1549, at 4 (1970), reprinted in 1970 U.S.C.C.A.N. 4007,

4010. . . .  'Where,' as here, 'Congress has authorized nationwide service of process ... so long

as the assertion of jurisdiction over the defendant is compatible with due process, the service

of process is sufficient to establish the jurisdiction of the federal court over the person of the

defendant.'" ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 626 (4th Cir. 1997) (quoting

Hogue v. Milodon Eng'g, Inc., 736 F.2d 989, 991 (4th Cir. 1984)).  The Fourth Circuit further

noted that in such cases, the Fifth Amendment's Due Process Clause "protects the liberty

interests of individuals against unfair burden and inconvenience," but  "when the defendant is

located within the United States, he must look primarily to federal venue requirements for

protection from onerous litigation,  because it is only in highly unusual cases that inconvenience

will rise to a level of constitutional concern."   Id. at 627 (internal quotations and citations

omitted).

_____

[2] North Carolina's long-arm statute, North Carolina General Statute § 1-75.4(1), has been interpreted by
the North Carolina Supreme Court as intended to reach to constitutional limits. See Combs, 886 F. 2d at 676 n.3
(citing Dillon v. Numismatic Funding Corp., 291 N.C. 674, 231 S.E.2d 629 (1977)).

In the present case, under ESAB Group, this Court would have a statutory basis for exercising personal jurisdiction over Defendants in light of the civil RICO claim.[3] Although Defendants raise due process arguments against the assertion of personal jurisdiction in this case, the Court notes that under ESAB Group, Defendants should look primarily to the federal venue requirements to provide protection from onerous litigation.  Therefore the Court now turns to a consideration of Defendants' contention that venue is improper in this District or that transfer of venue is appropriate.[4]

Under 28 U.S.C. § 1406(a), the Court "of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a) (2006). In considering a motion to dismiss under Rule 12(b)(3) for improper venue, "the court is permitted to consider evidence outside the pleadings.  A plaintiff is obliged, however, to make only a prima facie showing of proper venue in order to survive a motion to dismiss.    In

---

[3] Defendants contend that Plaintiff's RICO claim should be dismissed pursuant to Rule 12(b)(6), and that after the RICO claim is dismissed, the nationwide service of process provisions in § 1965  would not apply and personal jurisdiction would be lacking.  However, in Combs v. Bakker, the Court of Appeals for the Fourth Circuit noted the "awkwardness" that results from first addressing a Rule 12(b)(6) motion as to a RICO claim, rather than "addressing first the more fundamental challenge under Rule 12(b)(2) to personal jurisdiction with respect to all defendants and all claims." Combs, 886 F.2d at 675.  In light of the concerns noted in Combs, this Court will not address the Rule 12(b)(6) motion until after first considering the preliminary questions of personal jurisdiction and venue.  In addition, the Court notes that Defendants also contend that ESAB Group was wrongly decided.  However, Defendants concede that ESAB Group remains binding authority that this Court must follow. In any event, given the Court's ultimate determination, this Court need not consider those contentions further.

[4] The Court also notes that under prior cases in this District, this Court could transfer this case pursuant to 28 U.S.C. § 1404(a) or § 1406(a) even if there were not a sufficient basis for exercising personal jurisdiction over Defendants.  See Piedmont Hawthorne Aviation, Inc. v. Tritech Envtl. Health and Safety, Inc., 402 F. Supp. 2d 609, 613 (M.D.N.C. 2005) (noting that the Court need not consider whether it had personal jurisdiction over defendants before transferring the case under § 1404(a)); Parham v. Weave Corp., 323 F. Supp. 2d 670, 674 (M.D.N.C. 2004) ("A court that lacks personal jurisdiction or venue over a defendant may transfer an action pursuant to 28 U.S.C. § 1406(a) if transfer serves the interests of justice.")

assessing whether there has been a prima facie venue showing, we view the facts in the light most favorable to the plaintiff." Aggarao v. MOL Ship Mgmt. Co., Ltd., 675 F.3d 355, 365-66 (4th Cir. 2012) (citing Mitrano v. Hawes, 377 F.3d 402, 405 (4th Cir. 2004); Global Seafood Inc. v. Bantry Bay Mussels Ltd., 659 F.3d 221, 224 (2d Cir. 2011)).

Plaintiff in its Complaint and briefing contends that venue is proper under the general venue statute, 28 U.S.C.A. § 1391(b)(2) (West 2006 & Supp. 2012). Under 28 U.S.C. § 1391(b)(2), a civil action may be brought in a judicial district in which "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." However, Plaintiff does not allege that the equipment at issue in this action was ever situated in this district. As alleged in the Complaint and as set out above, the equipment that was the subject of the agreement between the parties was located in Venezuela and South Carolina, and was to be delivered to Nicaragua. Part of that equipment, or other substituted equipment, was later delivered to Costa Rica and was transported to Nicaragua.

Plaintiff nevertheless contends that "a substantial part of the events or omissions giving rise to the claim" occurred in this district. The "claim" in this case is Plaintiff's claim that Defendants committed fraud and breached an agreement in connection with the sale of the spinning equipment. In contending that the events giving rise to this claim occurred in this district, Mr. Woodard, Plaintiff's manager of operations, by affidavit describes events occurring in North Carolina consisting of: (1) at least 20 phone calls from Defendant Jackson Coker to Mr. Woodard, made by Defendant Coker calling a telephone number registered to a physical address

in Asheville, N.C., which connects the caller via the Internet to Plaintiff's operation in Nicaragua; (2) "several" cell phone calls received by Mr. Woodard from Defendant Jackson Coker when Mr. Woodard was physically present in North Carolina; (3) an unidentified number of cell phone calls from Mr. Woodard to Defendant Jackson Coker when Mr. Woodard was in North Carolina; (4) a wire transfer in October 2009 from a North Carolina bank to Coker International's account in Alabama; and (5) a second wire transfer in December 2009 from First Citizens Bank in North Carolina to Coker International.

In considering these contentions, the Court concludes that Plaintiff's assertions are insufficient to establish that a substantial part of the events or omissions giving rise to the claim occurred in this district. The transaction at issue involved an agreement between Jubilee in Nicaragua and CI in South Carolina regarding equipment to be delivered to Jubilee in Nicaragua from Venezuela and South Carolina. The allegedly fraudulent representations by Mr. Coker and CI were made from South Carolina to Mike Woodard, who was residing in Nicaragua and conducting operations for Jubilee in Nicaragua. In these circumstances, the fact that the telephone calls were routed through North Carolina via the Internet to Nicaragua would not represent an event or omission in North Carolina. Moreover, Plaintiff alleges that the 20 telephone calls were routed through Asheville, N.C., which is in the Western District of North Carolina, and in any case would not be an event occurring in this district. To the extent that Mr. Woodard traveled to North Carolina occasionally and spoke to Mr. Coker "several times" during those trips while Mr. Woodard was in North Carolina, the Court has no way of knowing whether Mr. Woodard was physically present within this district, as opposed to the Western

11

District, when he received and made the cellular telephone calls referred to in his affidavit.

Moreover, even if the Court assumes Mr. Woodard was in this district, this connection is

relatively tenuous, and would not reflect that a substantial part of the events or omissions giving

rise to the claim occurred in this district. Finally, with respect to the wire transfers, Plaintiff

argues in its brief that Jubilee wired funds (referring to the $150,000) to Defendants that "were

held by Plaintiff in banks physically located in this District." (Pl.'s Br. in Opp. [Doc. #20] at 6.)

However, in an apparent, partial contradiction to this argument, Mr. Woodard states in his

affidavit that he informed Defendant Jackson Coker that Plaintiff "would wire funds from bank

accounts in North Carolina, Nicaragua and Michigan." (Woodard Aff. ¶ 15.)  Pursuant to this

affidavit, the Court assumes that a portion of the funds wired to Defendants originated in a bank

located within this district.  However, the fact that a portion of the funds used to make a

payment under the agreement came from a bank account in this district would not establish that

a "substantial part" of the events giving rise to the claims in this case occurred in this district.

After considering all of the allegations and information in the light most favorable to Plaintiff,

and when all of the events giving rise to Plaintiff's claim are considered, the Court cannot find

that Plaintiff has made a prima facie showing that a substantial part of the events or omissions

giving rise to the claims occurred within this district to establish venue under 28 U.S.C.

§ 1391(b)(2).

Plaintiff has also noted that venue may be proper under the special venue provision of

the RICO statute, 18 U.S.C. § 1965.  Under 18 U.S.C. § 1965(a), a civil RICO action may be

instituted against any person in "the district court . . . for any district in which such person

12

resides, is found, has an agent, or transacts his affairs."   However, Plaintiff has not alleged that

any Defendant resides in this district, is found in this district, has an agent in this district, or

transacts affairs in this district.  A defendant "transacts his affairs" in the district when he

"regularly transacts business of a substantial and continuous character within the district."

Magic Toyota, Inc. v. Southeast Toyota Distribs., Inc., 784 F. Supp. 306, 319 (D.S.C. 1992).

Plaintiff has not attempted to show that Defendants transact such business in this district.

Therefore, venue is not proper in this district under 18 U.S.C. § 1965(a).[5]

Therefore, having considered the parties' contentions, this Court would conclude that

venue is not proper in this district under 28 U.S.C. § 1406(a), and pursuant to that statute the

Court "shall dismiss, or if it be in the interest of justice, transfer" this action "to any district or

division in which it could have been brought."  The parties agree and the Court finds that this

action could have been brought in the United States District Court for the District of South

Carolina where all Defendants reside.  (Pl.'s Br. in Opp. [Doc. #20] at 5 ("these proceedings may

have been filed in the District of South Carolina under the general venue statute"); Defs.' Br.

[Doc. #13] at 12 (the action "indisputably" could have been brought in the District of South

Carolina)).  In addition, Plaintiff has specifically taken the position that, "should the Court find

merit in Defendants' motions under Rule 12(b)(2) or Rule 12(b)(3), Plaintiff requests that this

Court transfer these proceedings to the District of South Carolina."  (Pl.'s Br. in Opp. at 2.)

---

[5] The only other possible subsection of this statute under which venue could be established is § 1965(b). Most courts hold, however, that this subsection is available only if venue is appropriate for at least one defendant under subsection (a).  See Medoil Corp. v. Clark, 753 F. Supp. 592, 599 (W.D.N.C. 1990); Heinemann v. Kennedy, No. 2:07CV91, 2008 WL 649061, at *6 (N.D.W. Va. Mar. 10, 2008).  Additionally, Plaintiff would have to show that the ends of justice require finding venue under subsection (b), which Plaintiff has not alleged and which the Court does not find.  See Magic Toyota, 784 F. Supp. at 321.

Transfer in the interest of justice under § 1406(a) is appropriate where there is an impediment to a decision on the merits in the transferor district that would not be an impediment in the transferee district.  In re Carefirst of Maryland, Inc., 305 F.3d 253, 255-56 (4th Cir. 2002).  In this case, Plaintiff's claims should be considered on their substance by a Court where jurisdiction and venue is proper.  In addition, there is no conduct by Plaintiff that would warrant dismissal rather than transfer.  Therefore, the Court finds that transferring this action to the District of South Carolina is in the interest of justice.

Moreover, even if venue were proper in this District, the Court nevertheless finds that transfer to the District of South Carolina is appropriate under 28 U.S.C. § 1404(a).  Section 1404(a) allows the Court to transfer an action "[f]or the convenience of parties and witnesses, in the interest of justice" to any other district where the action might have been brought.  28 U.S.C. § 1404(a).  Courts consider a number of factors when deciding whether to transfer an action pursuant to § 1404(a).  See Plant Genetic Sys., N.V. v. Ciba Seeds, 933 F. Supp. 519, 527 (M.D.N.C. 1996).  These factors include: "(1) the plaintiff's initial choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative advantage and obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interest in having localized controversies settled at home; (10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the

14

action; and (11) avoidance of unnecessary problems with conflicts of laws." Id.  "While the

plaintiff's choice of forum is accorded substantial weight, the deference given to the plaintiff's

choice is proportionate to the relation between the forum and the cause of action." Parham, 323

F. Supp. 2d at 674 (internal citations omitted).

In this case, although Plaintiff's choice of forum is this district, this district bears little

relation to the parties' dispute.  Notably, if Plaintiff's allegations of Defendants' scheme to

defraud are substantiated, the bulk of the documentary and testimonial evidence of such a

scheme will likely come from Defendants' principal place of business in South Carolina and

from Plaintiff's operations in Nicaragua.  The same cannot be said of North Carolina which,

according to the allegations of Plaintiff's Complaint, played only a minor role in the events

giving rise to Plaintiff's claim.  The primary witnesses will be Mike Woodard from Nicaragua,

Defendant Coker from South Carolina, and Chris Hancock, the yarn salesman from New Jersey.

 Any judgment in this case would be enforceable in South Carolina.  The only local interest in

this matter arises from the fact that Jubilee is based in North Carolina, but as noted above, this

project was coordinated by and through Jubilee's operations in Nicaragua.  Finally, with regard

to the practical and administrative issues to be considered, the Court notes that a related

proceeding is now pending in the District of South Carolina, Coproexnic Cooperative, et al. v.

Coker International, LLC and Jackson Coker, Sr., No. 6:12CV1534 (D.S.C.).  That suit was filed

by Coproexnic Cooperative and Genesis Spinning Cooperative, both Nicaraguan entities, as the

third-party beneficiaries of the agreement between Jubilee and CI.  Counsel for Jubilee has

appeared on behalf of Coproexnic and Genesis in that action, and Defendant CI has filed a

15

third-party complaint against Jubilee, all based on the same transaction and events as the present

suit. That matter includes additional parties not present in this suit, and transfer of this case

would allow all related issues to be resolved consistently in a single forum.[6] Therefore, after

considering all of the relevant factors, the Court finds that for the convenience of the parties and

witnesses and in the interest of justice, the action should be transferred to the District of South

Carolina under § 1404(a), even if venue were otherwise proper in this district.

Having reached this conclusion, the Court will not consider Defendants' Motion to

Dismiss Plaintiff's RICO claim under Federal Rule of Civil Procedure 12(b)(6), and that request

should be denied without prejudice to Defendants raising their contentions after this matter has

been transferred to the District of South Carolina.

Finally, the Court notes that Plaintiff has filed a Motion [Doc. #24] to compel

Defendants to confer under Federal Rule of Civil Procedure 26(f). However, this case has not

been set for an initial pretrial conference, and in light of the Recommendation set out above, the

Court will not set the matter for an initial pretrial conference at this time. Any further

proceedings should take place in the District of South Carolina, where venue is proper and the

related proceedings are pending. As such, Plaintiffs' Motion [Doc. #24] will be denied.

---

[6] When parallel suits with "substantially the same parties" raising "substantially the same issues" are pending in different forums, "[t]he Fourth Circuit recognizes the 'first-filed' rule, which gives priority to the first suit filed absent a balance of convenience favoring the second filed." Nexsen Pruet, LLC v. Westport Ins. Corp., 3:10CV895, 2010 WL 3169378 (D.S.C. Aug. 5, 2010) (citing Ellicott Mach. Corp. v. Modern Welding Co., Inc., 502 F.2d 178, 180 n.2 (4th Cir. 1974)). In this case, the present suit was clearly filed "first." However, the South Carolina suit includes parties and claims not present in this suit, and therefore the "first filed" rule would not apply here. Moreover, even if the "first-filed" rule did apply, the balance of factors under § 1404(a) still weighs in favor of transfer to South Carolina, as discussed above.

III.    CONCLUSION

IT IS THEREFORE RECOMMENDED that Defendants' Motion to Dismiss or to Transfer [Doc. #12] be GRANTED to the extent that this action be transferred to the United States District Court for the District of South Carolina pursuant to 28 U.S.C. § 1406(a) and, alternatively, pursuant to 28 U.S.C. § 1404(a), but otherwise DENIED without prejudice to Defendants raising their contentions under Rule 12(b)(6) after this matter has been transferred to the District of South Carolina.

IT IS ORDERED that Plaintiffs' Motion to Compel Defendants to Confer Under Rule 26(f) [Doc. #24] is DENIED in light of this Recommendation.

This, the 26th day of March, 2013.

                            /s/ Joi Elizabeth Peake
                        United States Magistrate Judge